IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

REBECKA J. STEINER                    :
                                      :
    Plaintiff,                        :     Case No.
                                      :
    v.                                :     TRIAL BY JURY
                                      :     DEMANDED
                                      :
GIANT OF MARYLAND, LLC                :
d/b/a GIANT FOODS                     :
                                      :
    Defendant.                        :

## COMPLAINT

## THE PARTIES

1.      Plaintiff, Rebecka J. Steiner ("Plaintiff") was at all times relevant to

this complaint a resident of Lewes, Delaware.

2.      Defendant, Giant of Maryland, LLC d/b/a Giant Foods ("Defendant")

is a public corporation organized and existing under the laws of the State of

Maryland.

## JURISDICTION

3.      This Court has jurisdiction based upon the existence of a question

arising under the laws of the United States of America.  This action arises under Title

VII, of the Civil Rights Act of 1954, 42 U.S.C. §2000e, et. seq., as amended by the

Civil Rights Act of 1991, §704 of Title VII.

4.      This Court has jurisdiction over the controversy based upon the

provisions of 42 U.S.C. §2000e-5(f)(3) as well as 28 U.S.C. §§1331 and 1334.

## VENUE

5.      The unlawful employment practices alleged herein were committed within the State of Delaware.  Accordingly, venue lies in the United States District Court for the District of Delaware.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      The Plaintiff timely filed a written charge of discrimination with the State of Delaware Department of Labor and Equal Employment Opportunity Commission on April 6, 2021.

7.      The Equal Employment Opportunity Commission issued Plaintiff a "Right to Sue Notice" which was received by Plaintiff on April 29, 2022.  *EEOC Right to Sue Notice* attached as Exhibit 1.

## FACTS

8.      Rebecka Steiner is a 29-year-old white female.

9.      Steiner has been a loyal and hardworking employee for the Defendant since March 21, 2020.

10.      Ms. Steiner was hired as a night time Deli Clerk and was in the process of being promoted as a Deli Lead in training.

11.     Within a year of her beginning her employment with the Defendant, Steiner and co-worker Emily Duck began facing inappropriate advances and sexual assault from another co-worker, Joseph Harding.

12.     Between January 2021 to February 2021, Steiner and Duck brought this to the attention of their union rep, the store manager, and human resources of Defendant.

13.      On one occasion, Harding tried to kiss Ms. Steiner.

14.     On another occasion, Harding said to another co-worker, Ronan Dunton, "we can always go fuck the whore in the deli" refering to Ms. Steiner.

15.     Dunton notified Ms. Steiner and Front End Manager Candace Jalcs about Harding's comments on January 8, 2021.

16.     Harding also texted Ms. Steiner saying that he wanted to kiss her and asked for her address to "wake her up".

17.     Ms. Steiner did not come forward earlier with Harding's inappropriate conduct because Harding's wife worked with Ms. Steiner in the Deli and was openly jealous of her promotion, making Ms. Steiner fear retaliation.

18.     On December 23, 2020, Harding instructed Ms. Steiner to come to the dairy cooler with him.

19.     Believing that Harding had more freight for her to move, Ms. Steiner went into the cooler where once inside, Harding made a sexual advance and tried

to physically kiss Steiner.

20.     On January 7, 2021, Ms. Steiner and Ms. Duck relayed Harding's

innapropriate advances to the Union Rep Nancy Stout.

21.     Stout innapropriately responded " I'm not sure what type of girl you

are as far as texting him back".

22.     Stout also went on to say that she could not do anything until the store

manager came back from vacation.

23.     After not hearing any update on the matter, on January 27, 2021, Ms.

Steiner went to Store Manager, Robert Willey herself.

24.     Willey said he did not know what matter Steiner was talking about

and that the Union Rep Stout had not told him about Harding's reported

inapropriate behavior

25.     Ms. Steiner told Willey about the incident with her and Harding, the

statement made by Harding to Dunton, and provided the printed text messages

between Ms. Steiner and Harding.

26.     Willey responded by telling Ms. Steiner that he could not do anything

because he did not hear the comments that Harding made to Dunton, nor did he see

the incident in the cooler with Ms. Steiner and Harding.

27.     Willey further stated that saying "no" in text message with either

"lol", "imma smack you, "you're insane Joe", using the eye rolling emoji, or the

middle finger emoji did not count as Ms. Steiner telling her harasser to stop.

28.     The next day on January 28, Ms. Steiner went to talk to Union Rep Stout again, where Stout told Ms. Steiner that she was very upset that she had told management and said to Ms. Steiner and the Front End Manager that Ms. Steiner creates too much drama and that she is bringing too many people into the matter.

29.     Ms. Steiner was in tears over the situation and was almost ready to resign from her employment.

30.     Shortly after the meeting with the Union Rep, Ms. Steiner was informed that she was exposed to COVID-19 and had to be sent home to quarantine for two weeks.

31.     Near the end of the 10 days, Ms. Steiner texted her manager, to touch base as she was scheduled to return on Sunday and to tell him that she was afraid to return considering the aformentioned conduct of Harding and the handling of the matter by Union Rep Stout, management, and HR.

32.     On February 16, 2021, Ms. Steiner met with Mr. Willey regarding Harding's conduct.

33.     In that meeting, Willey decided to give Harding a warning and there would only be further action if Harding acted inappropriately again.

34.     Ms. Steiner agreed to be put back on the schedule for the following Monday, however she was never put back on the schedule.

35.     Steiner was then contacted by Christina Clearly to coordinate a time
to pick up a check that was at the job for her.

36.     When Steiner met with Clearly, she stated that Willey said that Steiner
was crazy and didn't care what Dunton had to say, referring to the statement
Harding had made to him about Steiner.

## COUNT I: GENDER DISCRIMINATION

37.     Plaintiff restates and realleges paragraphs 1 through 36, inclusive, as
though set forth here in full.

38.     Such acts as described above by defendants, its agents and employees,
constitute unlawful sex discrimination and sexual harassment constituting a hostile
work environment against Plaintiff in violation of Title VII, 42 U.S.C. §2000(6), et
seq.

39.     As a direct and proximate result of Defendants' unlawful
discrimination, in the nature of sex discrimination, by and through its managers,
agents, and employees.

40.     Plaintiff has been injured and has suffered and  will continue to suffer
pain, humiliation, anxiety, depression, mental anguish, emotional distress, physical
manifestation of anxiety and the loss of past and future wages and benefits.

41.     As a direct and proximate result of Defendants' unlawful
discrimination, by and through its agents and employees, Plaintiff has been injured

and has suffered and will continue to suffer pain, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation of anxiety and the loss of past and future wages and benefits.

## COUNT II: RETALIATION

42. Paragraphs 1 through 41 are hereby realleged and incorporated herein by reference as if full set forth herein.

43. Such acts as described above by defendants, its agents and employees, constitute unlawful retaliation against Steiner for her having complained of discrimination and sexual harassment in violation of §704(a) of Title VII, 42 U.S.C. §2000(e)-(3)(a).

44. As a direct and proximate result of Defendants' unlawful discrimination, in the nature of sexual harassment and retaliation, by and through its agents and employees, Steiner has been injured and has suffered and will continue to suffer pain, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation of anxiety and the loss of past and future wages and benefits.

**WHEREFORE**, Plaintiff, Rebecca Steiner requests this Honorable Court to enter a judgment in her favor and against the Defendant as follows:

a. Declare the conduct engaged in by the defendant be in violation of the plaintiff's statutory rights.

b.     Award the plaintiff back pay compensation for her pecuniary losses from the date of the wrongful conduct described herein until the date of any judgment.

c.     Award the plaintiff sufficient funds to compensate her for her losses, pain and mental suffering, which cannot otherwise be compensated by equitable relief.

d.     Award the plaintiff compensatory and punitive damages not otherwise specified.

e.     Award the plaintiff any and all other liquidated damages, which would make the plaintiff "whole".

f.     Award the plaintiff attorney fees, the costs of this action, pre-judgment and post judgment interest, and;

g.     Such other and further relief as this Court feels proper.


**THE POLIQUIN FIRM LLC**

/s/ Ronald G. Poliquin
RONALD G. POLIQUIN, ESQUIRE
Delaware Bar ID No. 4447
1475 S. Governors Ave.
Dover, DE  19904
(302) 702-5501
*Attorney for Plaintiff Rebecca Steiner*

Dated: July 28, 2022