IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

REBECKA J. STEINER,

    Plaintiff,

v.

GIANT OF MARYLAND, LLC d/b/a GIANT FOODS,

    Defendant.

C.A. No. 22-990-GBW

## MEMORANDUM ORDER

Pending before this Court is Defendant Giant of Maryland, LLC's ("Giant" or "Defendant") Motion to Dismiss for Failure to State a Claim. *See* D.I. 6. The Court has reviewed the relevant briefing. *See, e.g.*, D.I. 7; D.I. 11; D.I. 13. For the reasons stated below, the Court **GRANTS** Defendant's Motion to Dismiss for Failure to State a Claim (D.I. 6) and, thus, dismisses Plaintiff's Complaint (D.I. 1) without prejudice.

### I.    BACKGROUND[1]

Rebecka Steiner ("Plaintiff" or "Steiner") filed this action against Defendant, pursuant to Title VII of the Civil Rights Act of 1954, *see* 42 U.S.C. § 2000e, *et. seq.*, alleging that the actions of a co-worker created a hostile work environment and that Defendant retaliated against her after she lodged multiple complaints against this co-worker. *See generally* D.I. 1 ¶¶ 1-3. Plaintiff alleges that she has been employed by Defendant as a deli clerk since March 21, 2020. *Id.*, ¶ 9.

---

[1] Under Rule 12(b)(6), the Court must accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the plaintiff. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

1

While employed by Defendant, Plaintiff claims that a co-worker, Joseph Harding ("Harding"), began making inappropriate sexual advances towards her. *Id.*, ¶ 11. Specifically, Plaintiff alleges that Harding once instructed her to come assist in moving freight from the dairy cooler, but when Plaintiff arrived, Harding tried to kiss her. *Id.*, ¶ 18-19. On another occasion, Plaintiff alleged that Harding texted Plaintiff saying that he wanted to kiss her and asking for her address to "wake her up." *Id.*, ¶ 16. Further, Plaintiff alleges that Harding said to another co-worker that "we can always go fuck the whore in the deli," which Plaintiff claims was referring to herself, although she admittedly did not hear Harding's comment. *Id.*, ¶¶ 14-15.

On January 7, 2021, Plaintiff alleges she relayed Harding's inappropriate advances to her union representative, Nancy Stout ("Stout"). *Id.*, ¶ 20. Stout purportedly responded that "I'm not sure what type of girl you are as far as texting him back," and further stated that she could not do anything until Plaintiff's store manager came back from vacation. *Id.*, ¶¶ 20-22. On January 27, 2021, Plaintiff went to her store manager, Robert Willey ("Willey"), to report Harding's conduct. *Id.*, ¶ 23. Willey claimed he did not know what Plaintiff was referring to, stated that Stout had not relayed Plaintiff's complaints, and explained that he could not do anything because he neither heard Harding's comment or saw the incident in the dairy cooler. *Id.*, ¶¶ 25-26. Willey further stated that Plaintiff saying "no" in text messages together with "lol", "imma smack you, "you're insane Joe", the eye rolling emoji, or the middle finger emoji did not constitute Plaintiff telling Harding to stop. *Id.*, ¶ 27. The following day, Plaintiff sought to speak again with Stout, but Stout told Plaintiff that she was upset Plaintiff went to Willey and that Plaintiff "creates too much drama." *Id.*, ¶ 28.

After her second discussion with Stout, Plaintiff was exposed to Covid-19 and was required to quarantine for two weeks. *Id.*, ¶ 30. On February 16, 2021, at the end of her quarantine period,

2

Plaintiff met again with Willey regarding Harding's conduct. *Id.*, ¶ 32. During that meeting, Willey explained that he would warn Harding about his conduct and stated that further action would be taken if Harding acted inappropriately again. *Id.*, ¶ 33. While Plaintiff thereafter agreed to be scheduled to work the following Monday, Plaintiff was never scheduled to work. Subsequently, Plaintiff contacted another co-worker to coordinate a time to pick up her paycheck, and when Plaintiff met with that co-worker, the co-worker explained that Willey claimed Plaintiff was "crazy" and that he did not care about Harding's comment. *Id.*, ¶¶ 35-36.

Based on her complaints against Harding for his inappropriate behavior, Plaintiff claims that Defendant created a hostile work environment and effectively terminated her by failing to schedule her for work. Based on these allegations, Plaintiff filed a written charge of discrimination with the State of Delaware Department of Labor and Equal Employment Opportunity Commission (the "EEOC") on April 6, 2021. *Id.*, ¶ 6. The EEOC issued a "Right to Sue" notice on April 19, 2022. *Id.*, ¶ 7. Plaintiff thereafter filed the present suit on July 28, 2022.

## II.   LEGAL STANDARD

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of

the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

"'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 WL 11446482 (3d Cir. Apr. 6, 2018). Rule 12(b)(6) requires the court to accept all factual allegations in the complaint as true and view them in the light most favorable to plaintiff. *Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020). The court may consider matters of public record and documents attached to, "integral to[,] or explicitly relied upon in" the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (cleaned up); *see also Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738, 739 (3d Cir. 2020) (same). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420).

### III. DISCUSSION

#### A. Hostile Work Environment

To state a claim under Title VII for employment discrimination, Plaintiff must allege that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff need not convince the Court of any of these elements at the motion to dismiss stage but must submit more than "the naked assertion" that she suffered

4

an adverse employment action because of her membership in a protected class. *See Santos v. Iron Mountain Film & Sound*, 593 F. App'x 117, 119 (3d Cir. 2014).

Sexual harassment is a form of discrimination actionable under Title VII, and such harassment may give rise to a claim of hostile work environment. *See Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999). "Title VII prohibits sexual harassment that is 'sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). A claim of hostile work environment based on sexual harassment requires Plaintiff to establish:

> (1) that she suffered intentional discrimination because of her sex; (2) that the discrimination was severe or pervasive; (3) that the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) that *respondeat superior* liability exists.

*See Mandel*, 706 F.3d at 167. Therefore, to withstand a motion to dismiss, Plaintiff must plausibly allege facts to support a reasonable inference that each of these elements is present here.

Defendant first argues that Plaintiff has failed to adequately plead the second element of a hostile work environment claim—i.e., that the sexual harassment was severe or pervasive. D.I. 7 at 5. According to Defendant, when there are only isolated incidents, those incidents must be "extremely serious" to give rise to a claim of hostile work environment. *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). But Defendant claims that, while Plaintiff's Complaint alleges that Harding tried to kiss Plaintiff once in a dairy cooler under the pretext of helping move additional freight, "Plaintiff fails to offer any factors providing the context for the attempted kiss," including what Plaintiff said or how she reacted to Harding's advance. D.I. 7 at 6. Furthermore, Defendant argues that Harding's sole flirtatious text message sent to Plaintiff— which stated that Harding wanted to kiss Plaintiff and asked for her address to "wake her up," *see*

5

D.I. 1 ¶ 16—as well as Harding's profane comment about Plaintiff—which Plaintiff did not hear herself but, rather, learned of the comment through another co-worker, *see id.* ¶ 15—may be unprofessional, but such actions "do[] not rise to the level of creating a hostile workplace environment." *Id.* (citing *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001)). Thus, even when viewed collectively, Defendant argues that Plaintiff has still only alleged isolated incidents that fall short of the severity or pervasiveness required to support a claim for hostile work environment.

    The Court agrees with Defendant. In reviewing a hostile work environment claim, the Court must look to the totality of the circumstances to determine whether the accused actions constitute severe or pervasive conduct actionable under Title VII. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) ("[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."); *see also Kokinchak v. Postmaster Gen. of the United States*, 677 F. App'x 764, 767 (3d Cir. 2017). Accepting Plaintiff's well-pleaded factual allegations as true, the Court cannot reasonably infer that Plaintiff was subjected to either pervasive or severe sexual harassment. While Plaintiff plausibly alleges inappropriate verbal conduct by Harding on two occasions, as well as one instance of attempted physical contact by Harding, *see* D.I. 1 ¶¶ 13-16, 18-19, the Court is unable to conclude that these isolated incidents were of the severity necessary to support Title VII liability. Importantly, "[u]nless extremely serious, offhand comments and isolated incidents are insufficient to sustain a hostile work environment claim." *Chinery v. Am. Airlines*, 778 F. App'x 142, 145 (3d Cir. 2019); *see also Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (a single

complained-of incident must be so extreme as "to amount to a change in plaintiff's employment terms and conditions") (quoting *Faragher*, 524 U.S. at 788).

Harding's verbal harassment and unwanted physical advancement was unbecoming of any individual in modern society and is unacceptable in the workplace—or anywhere else—but Title VII requires more. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("Title VII, we have said, does not set forth a general civility code for the American workplace.") (quotation marks and citation omitted). To state a claim under Title VII, Plaintiff must plausibly allege that she was subjected to severe or pervasive sexual harassment that created a hostile work environment. Having failed to do so, the hostile work environment claims must be dismissed.

Separately, Defendant also argues that Plaintiff's Complaint "fails to support an inference that [Defendant] may be held liable for Harding's actions" under the fifth element of a hostile work environment claim—i.e., that *respondeat superior* liability exists. D.I. 7 at 7-8. "Under Title VII, an employer's liability for such harassment may depend on the status of the harasser." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). If the harassing employee is the victim's co-worker, as is the case here, "the employer is liable only if it was negligent in controlling working conditions." *Id.*; *see* D.I. 1 ¶ 11 (identifying Harding as a "co-worker"). Thus, to properly assert the fifth element of a hostile work environment claim, Plaintiff must establish that Defendant "failed to provide a reasonable avenue for complaint" or, alternatively, that Defendant "knew or should have known of the harassment and failed to take prompt remedial action." *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009); *see also Hitchens v. Montgomery Co.*, 278 F. App'x 233, 236 (3d Cir. 2008). "An effective grievance procedure—one that is known to the victim and that timely stops the harassment—shields the employer from Title VII liability for a hostile environment." *Bouton v. BMW of N. Am., Inc.*, 29 F.3d 103, 110 (3d Cir.

1994). "Prompt remedial action" is conduct "reasonably calculated to prevent further harassment," even if it does not effectively end the harassment. *See, e.g., Bumbarger v. New Enter. Stone & Lime Co.*, 170 F. Supp. 3d 801, 838 (W.D. Pa. 2016); *Peace-Wickham v. Walls*, 409 F. App'x 512, 519 (3d Cir. 2010) (citing *Jensen v. Potter*, 435 F.3d 444, 453 (3d Cir. 2006)).

Here, the Court agrees with Defendant that Plaintiff has failed to demonstrate that Defendant failed to provide a "reasonable avenue for complaint," or that it failed to take prompt remedial action of any known harassment. The present record reflects that Defendant maintains a harassment policy that provides avenues for reporting harassment and that Plaintiff, as evidenced by Plaintiff bringing Harding's conduct "to the attention of their union rep, the store manager, and human resources," *see* D.I. 1 ¶ 12, was clearly aware of those options. In fact, the record demonstrates that Plaintiff availed herself multiple times to these avenues of lodging a sexual harassment complaint. *See* D.I. 1 ¶ 20 ("On January 7, 2021, Ms. Steiner and Ms. Duck relayed Harding's innapropriate [sic] advances to the Union Rep Nancy Stout."); *id.*, ¶ 23 ("Ms. Steiner went to Store Manager, Robert Willey herself."); *id.*, ¶ 32 ("On February 16, 2021, Ms. Steiner met with Mr. Willey regarding Harding's conduct."). There is nothing in the record to otherwise suggest that Defendant knew or should have known about the existence of a hostile work environment when she complained to her union representative, the store manager, and human resources. *Huston*, 568 F.3d at 105 (finding that an employer knew or should have known about workplace harassment if "management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment"). Furthermore, the record demonstrates that, after Plaintiff contacted the store manager, he took prompt and remedial action against Harding. *See* D.I. 1 ¶ 32 (Plaintiff's Complaint alleging that, after Plaintiff complained of Harding's conduct to her store manager, the store manager gave Harding a warning and threatened

further action if Harding's conduct continued). That Plaintiff was dissatisfied with the Defendant's response to Plaintiff's complaint is irrelevant, as the proper focus is whether Defendant's remedial action was "reasonably calculated to prevent further harassment."[2] *See Hemphill v. City of Wilmington*, 813 F. Supp. 2d 581, 588 (D. Del. 2011) (quoting *Knabe v. Boury Corp.*, 114 F.3d 407, 411 n.8 (3d Cir. 1997)). Accordingly, because Plaintiff's Complaint also fails to allege facts to create a plausible inference that Defendant failed to provide a "reasonable avenue for complaint" or that it failed to take prompt remedial action of any known harassment, Plaintiff's cause of action against Defendant for creating a hostile work environment must be dismissed.

## B. Retaliation

Plaintiff also alleges that, even though she agreed to be put back on the schedule after she both lodged her complaints against Harding and completed her quarantine following her Covid-19 exposure, "she was never put back on the schedule." D.I. 1 ¶ 32. Plaintiff claims that Defendant's failure to schedule her for work "because of her complaints about sexual harassment concerning Harding" amounts to an effective termination. D.I. 11 at 13.

An employer is prohibited from discriminating against an employee who "opposed any practice made an unlawful employment practice" by Title VII or against an employee who "made a charge, testified, assisted, or participated" in an investigation under Title VII. *See* 42 U.S.C. §§ 2000e-3(a). Title VII thus prohibits an employer from "retaliating against an employee for

---

[2] Plaintiff's argument that the alleged hostile work environment concluded with a "tangible work action" misapplies the law. *See* D.I. 11 at 10-11. A "tangible employment action" creates strict liability only where the alleged harasser is a supervisor, i.e., the individual has the power "to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *See, e.g., Vance*, 570 U.S. at 429 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152 (3d Cir. 1999) (citing *Faragher*, 524 U.S. at 775). Here, the Complaint is clear that Harding was Plaintiff's co-worker, and does not allege that he had any supervisory authority over her. *See* D.I. 1 ¶11.

complaining about, or reporting, discrimination or retaliation." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 256 (3d Cir. 2017). A *prima facie* case of retaliation requires the Plaintiff to show (1) that she engaged in conduct protected by Title VII, (2) that her employer took adverse action against her and (3) that there is a causal link between her protected conduct and the employer's adverse action against her. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015). To state a claim of retaliation sufficient to withstand a motion to dismiss, Plaintiff must "plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of these three elements. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

Defendant first argues that Plaintiff has not adequately pled the second element—i.e., that Defendant took an adverse employment action against her. D.I. 7 at 10. Defendant contends that "[c]ritically, the Complaint does not allege that Giant discharged Plaintiff," nor does the Complaint allege that Plaintiff ever inquired about the status of her employment or when she would be returned to the schedule. *Id.* In contrast to discrimination claims, an adverse employment action in a retaliation claim is one that a reasonable employee would find materially adverse, "mean[ing] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57. This generally requires that the adverse employment action be one which "is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Gross v. City of Jersey City*, C.A. No. 18-9802, 2019 WL 2120312, at *4 (D.N.J. May 15, 2019) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). Typically, this constitutes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly

10

different responsibilities, or a decision causing a significant change in benefits." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 328 (3d Cir. 2015) (quoting *Ellerth*, 524 U.S. at 761).

Here, the Court cannot conclude that Plaintiff has alleged sufficient facts to establish that an adverse employment action was taken against her based on her complaints regarding Harding's conduct. All that Plaintiff alleges in her Complaint is that, during her meeting with her store manager on February 16, 2021, Plaintiff told him that that she "agreed to be put back on the schedule" the following Monday, but that "she was never put back on the schedule." D.I. 1 ¶ 32. Further, Plaintiff claims that, after her meeting with the store manager, she was contacted by another colleague "to coordinate a time to pick up a check," and when she did, she learned from that colleague that the store manager called her "crazy." *Id.*, ¶¶ 35-36. However, even taking all allegations as true, these facts cannot plausibly raise the interference that Defendant **terminated** Plaintiff's employment, let alone took any other materially adverse action against her. *See Pape v. Dircksen & Talleyrand Inc.*, C.A. No. 16-5377, 2019 WL 1441125, at *8 (E.D.N.Y. Mar. 31, 2019). In fact, Plaintiff's allegation that she "***has been*** a loyal and hardworking employee for the Defendant since March 21, 2020" belies any inference that she was terminated by Defendant. *Id.*, ¶ 9 (emphasis added).[3] Having failed to do plausibly allege that she suffered an adverse employment action, Plaintiff's retaliation claim must be dismissed.

Additionally, Defendant argues that Plaintiff has failed to adequately plead the third element here—i.e., that there was a causal connection between Plaintiff's protected conduct and her alleged failure to be scheduled for work after completing her mandatory quarantine period.

---

[3] Although Plaintiff's Complaint demonstrates that, after she complained to both her store manager and union representative, she was not scheduled to work between January 28, 2021, and February 16, 2021, this does not rise to the level of an "adverse employment action" because Plaintiff was admittedly unable to work due to a mandatory quarantine related to a Covid-19 exposure. *See* D.I. 1 ¶¶ 28, 30-32.

11

D.I. 7 at 11. "To establish the requisite causal connection, Plaintiff must allege facts to demonstrate either: '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Frazer v. Temple Univ.*, 25 F. Supp. 3d 598, 615 (E.D. Pa. 2014) (quoting *Cooper v. Menges*, 541 F. App'x 228, 232 (3d Cir. 2013)). Moreover, a plaintiff must allege "facts showing 'actual antagonistic conduct or animus' in 'the intervening period,' between the protected activity and the retaliation." *Id.* at 616. According to Defendant, the four weeks between Plaintiff lodging her complaints with management and the alleged failure to schedule her to work is "not unduly suggestive of a retaliatory motive." D.I. 7 at 12 (citing *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (holding a temporal proximity of approximately three weeks could not raise issue of material fact as to causation in a retaliation claim)). Furthermore, Defendant contends that Plaintiff's Complaint "fails to allege facts showing any pattern of antagonism between her alleged protected activity and the purported retaliation sufficient to raise a plausible inference that Plaintiff's complaint about Harding was the but-for cause of [Defendant's] alleged failure to put her back on the schedule." D.I. 7 at 12.

    Here, the Court agrees with Defendant that Plaintiff has failed to demonstrate that there exists a causal connection between Plaintiff's protected conduct—i.e., complaining of Harding's conduct—and her alleged failure to be scheduled for work after the completion of her Covid-19 quarantine. While Plaintiff asserts that Defendant "terminating" Plaintiff shortly after she complained of Harding's harassment demonstrates a clear causal connection, *see* D.I. 11 at 13, Plaintiff's own allegations show that Plaintiff was not able to be scheduled for at least three of the four weeks between lodging her complaints and her purported failure to be scheduled because she was required to quarantine following a Covid-19 exposure. *See* D.I. 1 ¶¶ 30-31. While temporal

12

proximity between the protected activity and adverse employment action may sometimes be sufficient to establish this causal link, the Third Circuit has emphasized that the timing must be "unusually suggestive" to alone support a finding on the causal link. *Jones*, 796 F.3d at 331. Plaintiff has failed to plead any facts to suggest that Defendant's timing is "unusually suggestive" of the requisite causal link to support a claim of retaliation. *See Rooks v. Alloy Surfaces Co., Inc.*, C.A. No 09-839, 2010 WL 2697304, at *2 (E.D. Pa. July 6, 2010) ("[W]hen a causal connection relies on temporal proximity alone, courts generally require that the termination occur within a few days of the protected activity.") (internal citation omitted). Additionally, and contrary to Plaintiff's assertion that her Complaint "lists numerous incidents" demonstrating a pattern of antagonism, *see* D.I. 11 at 13, the only alleged statement connected to Defendant is that Plaintiff heard, through a co-worker, that the store manager had told another employee that Plaintiff was "crazy."[4] *See* D.I. 1 ¶¶ 35-36. Not only does this vague allegation fail to establish that the store manager's comment was made *because* of Plaintiff's complaints about Harding, but the store manager's *single* comment cannot establish a *pattern* of antagonism. *See, e.g., Dorsey v. Pennsbury Sch. Dist.*, C.A. No. 20-863, 2022 WL 889156, at *4 (E.D. Pa. Mar. 25, 2022) ("[A] single comment does not establish a pattern of antagonism."); *Perry-Hartman v. Prudential Ins.*

---

[4] Plaintiff's Answering Brief relies heavily on the statements made by Plaintiff's union representative to demonstrate a retaliatory motive. See D.I. 11 at 13 ("The Complaint also lists numerous incidents demonstrating a pattern of antagonism including her union representative asking 'what type of girl she was,' management criticizing her for not rebutting Harding's advances more forcefully, attacking her for reporting the incident to management, being called 'crazy' for her allegations against Harding."). However, there is no allegation or suggestion in the Complaint that the union representative had any decision-making authority with respect to Plaintiff's employment or scheduling, nor that the union representative influenced the ultimate decision-maker in any way. D.I. 1 ¶ 28; *see Caver v. City of Trenton*, 420 F.3d 243, 258 (3d Cir. 2005) ("[R]etaliatory motive on the part of non-decision-makers is not enough to satisfy the causation element"). Thus, without more, the Court cannot infer a retaliatory motive based on the union representative's statements.

*Co. of Am.*, C.A. No. 17-4732, 2021 WL 3077551, at *13 (E.D. Pa. July 20, 2021). Thus, Plaintiff has failed to plausibly allege the requisite causal link between her protected activity and her failure to be scheduled to work and, as a result, the retaliation claim must be dismissed.

### C. Leave to Amend

Plaintiff requests that, if the Court grants Defendant's Motion to Dismiss, Plaintiff be granted "leave to amend its complaint to address any deficiencies cited by the Court." D.I. 11 at 13. Pursuant to Federal Rule of Civil Procedure 15(a)(2), courts "should freely give leave [to amend] when justice so requires." However, "undue delay, bad faith, dilatory motive, prejudice, [or] futility" could all "justify a denial of leave to amend." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted under the standard of Federal Rule of Civil Procedure 12(b)(6)." *Lejon-Twin El v. Marino*, 722 F. App'x 262, 265 (3d Cir. 2018) (quoting *Shane*, 213 F.3d at 115) (internal quotations marks omitted). Because Rule 15(a)(2) requires that leave to amend be freely granted "when justice so requires," and because this is the first time that Plaintiff's allegations have been found deficient, the Court will grant Plaintiff's request for leave to file an amended complaint.

### IV. CONCLUSION

For the reasons stated above, the Court grants Defendant's Motion to Dismiss, *see* D.I. 6, for failure to state a claim and, thus, dismisses Plaintiff's Complaint without prejudice. The Court also grants Plaintiff's request for leave to file an amended complaint. D.I. 11 at 13-14.

\* \* \*

NOW THEREFORE, IT IS **HEREBY ORDERED** on July 10, 2023 that:

1. Defendant's Motion to Dismiss for Failure to State a Claim (D.I. 6) is **GRANTED**;

2. Plaintiff's Complaint (D.I. 1) is **DISMISSED** without prejudice; and

3. Plaintiff's Request for Leave to File an Amended Complaint (D.I. 11 at 13-14) is **GRANTED**. Plaintiff shall, within twenty-one (21) days of the entry of this Order, file an amended complaint.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE